1        IN THE UNITED STATES DISTRICT COURT
2
                 DISTRICT OF KANSAS
3

4

UNITED STATES OF AMERICA,         )
5                                 )
                        Plaintiff,) District Court
6                                 ) Case No. 07-10223
vs.                               ) Circuit Court
7                                 ) Case No. 08-3260
TODD R. GEHRINGER,                )
8                                 )
                        Defendant,)
9                                 )
  _____

10

11

12

13              **TRANSCRIPT OF JURY TRIAL**

14
       On the 3rd day of June, 2008, came on to be heard
15  **Jury Trial** in the above-entitled and numbered cause
    before the HONORABLE MONTI L. BELOT, Judge of the United
16  States District Court for the District of Kansas,
    Sitting in Wichita.
17

18

19

20

21  APPEARANCES:

22      The Plaintiff appeared by and through Mr. Chris
    Oakley and Mr. Matt Treaster:
23
        The Defendant appeared by and through Mr. Steve
24  Gradert.

25

Cindy L. Schwemmer, Certified Shorthand Reporter
  United States District Court, Wichita, Kansas

1                        **I N D E X**

2   **JUNE 3, 2008**:

3   Arraignment:                                  4
    Voir Dire NOT Transcribed
4   Preliminary Instructions to Jury:             6
    Opening Statements NOt Transcribed
5   **WITNESS**
    **CHAD COOPER**
6   Direct Examination by Mr. Oakley:            19
    Cross Examination by Mr. Gradert:            46
7   Redirect Examination by Mr. Oakley:          64
    **RICKI STARKS**
8   Direct Examination by Mr. Oakley:            68
    Cross Examination by Mr. Gradert:            73
9   **JEFFREY McVAY**
    Direct Examination by Mr. Oakley:            76
10  Cross Examination by Mr. Gradert:           113
    Redirect Examination by Mr. Oakley:         121
11  Recross Examination by Mr. Gradert:         122
    **ANNE KEAZER**
12  Direct Examination by Mr. Oakley:           124
    Cross Examination by Mr. Gradert:           127
13  **CHRISTOPHER NIXON**
    Direct Examination by Mr. Oakley:           130
14  Cross Examination by Mr. Gradert:           156
    Redirect Examination by Mr. Oakley:         166
15  **JUNE 4, 2008**:
    **JERAMY WOLFRAM**
16  Direct Examination by Mr. Treaster:         174
    Cross Examination by Mr. Gradert:           181
17  **KENTON CONNOR**
    Direct Examination by Mr. Oakley:           187
18  Cross Examination by Mr. Gradert:           192
    **KEVIN BRADFORD**
19  Direct Examination by Mr. Treaster:         194
    Cross Examination by Mr. Gradert:           208
20  **STEPHEN GRAVATT**
    Direct Examination by Mr. Treaster:         218
21  Cross Examination by Mr. Gradert:           227
    **NELDA HUNTER**
22  Direct Examination by Mr. Oakley:           230
    Cross Examination by Mr. Gradert:           231
23  Direct Examination by Mr. Oakley:           233
    **MIKE JONES**
24  Direct Examination by Mr. Oakley:           234
    Cross Examination by Mr. Gradert:           283
25  Redirect Examination by Mr. Oakley:         308

1   **MARY AYERS**
    Direct Examination by Mr. Treaster:      309
2   Cross Examination by Mr. Gradert:        322
    **LILLIAN NGONG**
3   Direct Examination by Mr. Treaster:      325
    Cross Examination by Mr. Gradert:        334
4   **RANDALL FORNSHELL**
    Direct Examination by Mr. Treaster:      337
5   Cross Examination by Mr. Gradert:        341
    **LILLIAN NGONG**
6   Direct Examination by Mr. Treaster:      343
    **WES WILLIAMSON**
7   Direct Examination by Mr. Oakley:        345
    Cross Examination by Mr. Gradert:        378
8   **MOTION**                               399
    **STIPULATION READ TO JURY:**            405
9   **JUNE 6, 2008:**
    **ARGUMENT ON INSTRUCTIONS:**            408
10  **TODD GEHRINGER**
    Direct Examination by Mr. Gradert:       441
11  Cross Examination by Mr. Oakley:         477
    Redirect Examination by Mr. Gradert:     514
12  Recross Examination by Mr. Oakley:       518
    **JUDGE BELOT READS INSTRUCTIONS TO JURY:** 521
13  Closing Argument NOT Transcribed
    **VERDICT**                              522
14  Certificate of Certified Shorthand Reporter:   526

15

16

17

18

19

20

21

22

23

24

25

1                    (Beginning at 9:15 a.m. June 3,
2                    2008, the following proceedings
3                    were had.)
4          THE COURT:  This is United States against Todd
5    Gehringer.  07-10223.  Chris Oakley and Matt Treaster
6    are here for the Government.  The Defendant appears with
7    Steve Gradert.
8       Before we bring in the jury, I want to deal with
9    this Second Superseding Indictment and, Mr. Oakley, my
10   understanding is that it doesn't change the charges, it
11   only changes the name of a firearm?
12          MR. OAKLEY:  That's correct, Your Honor.
13          THE COURT:  Which count?
14          MR. OAKLEY:  Count 7.
15          THE COURT:  Count 7.
16          MR. OAKLEY:  Originally we had alleged the
17   Defendant possessed two Ruger model Blackhawk .45
18   caliber revolvers and one Ruger model Blackhawk 357.  We
19   have now changed that to allege that he possessed one
20   Blackhawk .45 and two Blackhawk 357s.
21          THE COURT:  Okay.  Mr. Gehringer, do you
22   understand the amendment to Count 7?
23          DEFENDANT MR. GEHRINGER:  Yes, sir, I do.
24          THE COURT:  All right.  Well, I'm going to
25   enter a not guilty plea for him.  Is that acceptable?

1          DEFENDANT MR. GEHRINGER:  Yes.

2          THE COURT:  All right.  Now, you all know, I
3   think you know anyway, we'll start the case this
4   morning.  We'll go all day.  We'll go all day tomorrow.
5   Thursday, Judge Bostwick and I have to go to Kansas
6   City.  If we're not done, we will reconvene on Friday
7   and I'm hopeful that we'll be able to get the case on by
8   then.  That's what I intend to tell the jury.

9          I'll ask the standard questions.  I'll give each of
10  you ten minutes to voir dire the jury.  I think that
11  should be enough for this case.  And I won't put a time
12  limit on your opening statements; but please try to keep
13  them -- the last trial I had two weeks ago I told the
14  lawyers I wouldn't put any time on their opening
15  statements and the plaintiff took over an hour and a
16  half.  So, you guys know better.  All right.

17         Anything before we bring them up?

18         MR. OAKLEY:  No, Your Honor.

19         MR. GRADERT:  No, Your Honor.

20         THE COURT:  Okay.

21

22              (Voir Dire NOT Transcribed.)

23

24

25

1                    (Beginning at 11:34 a.m. the
2                    following proceedings
3                    continued.)
4           THE COURT:  Here's what I'm going to do, I'm
5    going to give you some preliminary instructions
6    regarding the law applicable in criminal cases and then
7    I'm going to let you go to lunch.  After lunch we'll
8    have the opening statements and then we'll begin the
9    evidence.  Going to lunch a little early, but I think it
10   makes sense to do it that way.
11          It's going to be your job in this case and -- I've
12   already alluded to this -- to find what the facts are.
13   You and you alone now are the judges of the facts.  I'm
14   the judge of the law.  I determine what law applies and
15   I decide what evidence is admissible or not admissible
16   and I kind of try to manage the case; but in the end,
17   it's the jury, the jurors individually and collectively,
18   who decide what evidence to believe and what evidence
19   not to believe and who weigh the evidence.  And that's
20   going to be your job.
21          Nothing that I may say or do during the course of
22   the trial is intended to indicate, nor should you
23   interpret it as indicating, what I think your verdict
24   should be.  That is entirely up to you.
25          The evidence in the case will consist primarily of

1  testimony of witnesses who will come here and testify
2  subject to cross-examination.  There will also be some
3  evidence.  I've seen some photographs here in a notebook
4  that's been provided.  And we may have -- will the
5  weapons be here as evidence?
6          MR. OAKLEY:  Yes.
7          THE COURT:  And other things that will come in
8  as evidence that you'll be able to see that is physical
9  evidence; but most of the evidence is going to be
10 through the testimony of witnesses.
11     I don't know whether there will be any stipulations
12 as to evidence.  Stipulations are agreements between the
13 parties as to evidence; but if there are stipulations, I
14 will tell you about those.
15     There are certain things that are not evidence and
16 I want you to understand what those are.  The
17 statements, arguments and the questions by the lawyers
18 are not evidence.  Now, that doesn't mean they're not
19 important.  They're very important.  When the lawyers
20 have the opportunity to make their opening statements
21 after lunch, I want you to listen carefully to them
22 because they give you the outline of what they believe
23 the evidence is going to show.  But they're not evidence
24 obviously.  Arguments that come at the end of the case,
25 those are not evidence.  They're important, but they're

1   not evidence.  And, of course, any questions that the
2   lawyers may ask of the witnesses are not evidence.
3       Now let's talk about objections.  I don't know that
4   there's going to be a lot of objecting in this case.  I
5   know these lawyers well.  They know each other well.
6   And they know what evidence is generally admissible and
7   what isn't, and so most of the time there are not a lot
8   of objections.  But there can be.  And objections are
9   made, not for the purpose of hiding evidence from you.
10  That's what it looks like on the television shows, to me
11  anyway, that I've watched, that the lawyers are trying
12  to keep facts away from the jury.  That's not the
13  purpose.  Evidence here comes in under the so-called
14  Federal Rules of Evidence and that's one of my jobs to
15  interpret those rules.  This case has never been tried
16  before.  I don't know what the evidence is going to be.
17  So if one of the lawyers believes that evidence is being
18  offered that would not be admissible under the federal
19  rules, then it is that lawyer's obligation to make an
20  objection.  You've heard objections before.  There's
21  certain kinds of evidence that is inadmissible because
22  it's hearsay.  A statement made out of court offered for
23  the truth of the statement, and that would be
24  inadmissible, or at least there are some exceptions to
25  the hearsay rule; but I'd have to rule on it.  So it

1  would be the lawyer's job to make me aware of that and
2  here's how they do that.  Generally speaking, they stand
3  at counsel table and they say, Judge, the government
4  objects, that calls for speculation.  And if I -- I'm
5  listening to the evidence and if I believe that I
6  understand the objection and the question does call for
7  speculation then I will sustain the objection and the
8  jury is to disregard the question and the witness's
9  answer if the witness has already answered.
10     These lawyers know that I won't put up with the
11  kind of Law and Order sort of scenario where the lawyer
12  asks the witness a question sort of like when did you
13  stop beating your wife, which, of course, you know,
14  can't be answered, and then when the objection is made,
15  withdraws the question.  We don't do that.  If I
16  overrule the objection, then you can consider the
17  question for its purpose and the witness's answer.
18     There are very few occasions, but it sometimes
19  happens, when I make a mistake about the admission of
20  evidence and it later turns out that I've admitted
21  evidence that I should not have admitted.  If I tell you
22  to disregard that, then you are to disregard that
23  evidence.  You're just not to talk about it or think
24  about it or allow it to enter into your deliberations.
25     Similarly, and this doesn't happen very often, but

1    occasionally I will tell you that evidence is admissible
2    for only a certain purpose and you are to follow that
3    instruction.
4         Now, anything that you hear outside the courtroom
5    or may see outside the courtroom is not evidence.  I
6    know Mr. Oakley mentioned to you that the lawyers don't
7    address you during the trial, and they don't.  They know
8    that that's not appropriate.  And really you probably
9    won't have much occasion to see the lawyers except in
10   the courtroom because Mrs. Lary is going to show you the
11   jury room and you come in a different way.  In other
12   words, you don't come in the courtroom like you did this
13   morning.  So you probably won't encounter them.  But if
14   you haven't figured it out already, these are nice guys
15   and they would love to talk to you, but -- and maybe
16   after the trial you might want to talk to them, but not
17   during the trial.  They won't engage you in conversation
18   out in the hall.
19        The evidence is -- there are really two kinds of
20   evidence in any case, criminal or civil.  There's direct
21   evidence and there is circumstancecal evidence.  I'm
22   sure you've all heard at least the term circumstantial
23   evidence.  And I want to give you that definition now so
24   that you will understand the differences.  Direct
25   evidence is, for example, the testimony of an eye

1  witness.  Circumstantial evidence is proof of a chain of
2  circumstances which points to the commission of the
3  offense.  The law makes no difference between the two,
4  but requires that before convicting a defendant that the
5  Government satisfy its proof beyond a reasonable doubt.

6  And that brings me to the definition of proof
7  beyond a reasonable doubt.  And this is another thing we
8  hear.  I think jurors have heard that term when they
9  come in and they think that they may have an idea about
10 it but it needs to be clarified.  I'll define this for
11 you in just a moment.

12 Proof beyond a reasonable doubt is proof that
13 leaves you firmly convinced of the Defendant's guilt.
14 There are very few things in this world that we know
15 with absolute certainty; and in criminal cases the law
16 does not require proof that overcomes every possible
17 doubt.  If, based on your consideration of the evidence,
18 you are firmly convinced that the Defendant is guilty of
19 the crimes charged, or any of them, you must find him
20 guilty.  On the other hand, if you think there is a real
21 probability that he is not guilty, you must give him the
22 benefit of the doubt and find him not guilty.  That's
23 proof beyond a reasonable doubt.

24 There are certain rules that apply in every
25 criminal case and you must keep these rules in mind

1  throughout the entire case.  The first we've already
2  talked about and that is the presumption of innocence.
3  This Defendant, as all defendants in criminal cases, is
4  presumed innocent and that presumption remains with him
5  until such time, if ever, that the jurors are convinced
6  beyond a reasonable doubt that the Government has met
7  its burden of proof.  In other words, the Defendant
8  starts out with a clean slate and that stays with him
9  throughout the trial.  The burden is always on the
10 Government until the very end of the case and the
11 Defendant -- I think I've touched on this before also --
12 has no obligation to prove that he is not guilty or
13 innocent.  He may present evidence if he wishes.  He may
14 testify.  He may call witnesses or both.  But he doesn't
15 have to.  And if he does not, you may not hold that
16 against him in any way or discuss it in the jury room.
17 And, of course, I've read you the definition of proof
18 beyond a reasonable doubt.
19     During the trial I'm going to tell you to remember
20 and heed the admonition when we break for a recess or in
21 the evening and this is what I mean by remember and heed
22 the admonition.  During the trial you are not to discuss
23 the case with anyone or permit anyone to discuss it with
24 you.  Mr. Palmateer, are you awake?
25          JUROR MR. PALMATEER:  A little bit.  I'm

1    sorry.  I'm a second shift worker.
2            THE COURT:  Well, I want you to have a cup of
3    coffee or two over the noon hour.
4      Now, there's a reason for this.  If you start
5    discussing the case during the trial, you'll start
6    making up your mind about the case before you hear all
7    the evidence and before you hear my instructions
8    regarding the law.  As Mr. Gradert I think said, the
9    case comes in piecemeal.  The government starts out.  It
10   puts on its evidence and you hear that evidence.  The
11   defendant then has the opportunity, if he wishes, to put
12   on his evidence.  And only then after you've heard my
13   final instructions on the law is it appropriate for you
14   to begin discussing the case.  So if you -- when you go
15   home tonight and your neighbor or your wife or whoever
16   says what are you doing today and you say, oh, my God,
17   I'm on a jury, I got picked to be on a jury.  And then
18   they start saying, well, what's the case about and what
19   witnesses have you heard, various things like that.
20   You're going to have to tell 'em that you can't tell
21   them.  And the reason is because of what I told you.
22   And you can't discuss the case among yourselves either.
23   Now that may seem a little strange that during the trial
24   you can't go into the jury room and talk about the case
25   during the lunch hour or whatever.  But it's the same

1    idea.  If you do that, you'll start making up your mind.
2    You may even start polarizing yourselves, taking
3    opposite positions, when you haven't heard all the
4    evidence.  So talk about anything you want to talk
5    about, just don't talk about the case.
6         Please do not do any research about the case or
7    about the evidence that you hear.  Nowadays everybody
8    has a computer.  Everybody knows about Google and all
9    these other search engines, and you go home and you've
10   heard a term or you heard something during the trial and
11   you think, well, it will make me a better juror if I go
12   home and research this and bring this information back
13   and share it with the other jurors.  No, it won't.
14   That's allowing something into the case that is not
15   evidence.  So please don't do that.
16        I don't think there will be any news media coverage
17   of this case.  It's inconceivable to me that there will
18   be, but it's always possible; and if there is any, you
19   are to not pay any attention to it.
20        So that's the admonition and please keep that in
21   mind at all times.
22        Now, couple of other things.  I'm going to let you
23   take notes.  You can do that.  We have notetaking
24   materials in the jury room and you're free to take
25   notes.  But remember that it's your memories regarding

1    the evidence and not your notes which control so -- and
2    you'll hear another instruction about that.
3         Now, sometimes jurors say, well, why don't you let
4    us ask questions.  I mean, you expect us to sit there
5    for days or weeks and listen to the lawyers and listen
6    to the witnesses and listen to the judge and we don't
7    get to ask any questions.  And I've never allowed it and
8    here's why.  I know you're going to have questions about
9    the evidence.  You're going to have -- but to allow
10   jurors to ask questions, this would be the procedure.
11   You would have to go into the jury room, you would have
12   to discuss the question or questions.  You would have to
13   write out the questions.  Then the questions would be
14   presented to the lawyers and to me.  And I would have to
15   decide whether or not it was an appropriate question,
16   first and foremost, and the lawyers would have an
17   opportunity to weigh in on that.  Then I'd bring you out
18   here and I would ask the question.  I wouldn't allow the
19   jurors to ask the question.  I would ask the question of
20   the witness.  And the witness would give the answer.
21   Now, if the witnes's answer didn't satisfy the jury, in
22   other words, I wouldn't follow up.  I'm not the jury.
23   I'm not the decision maker.  Then we would have to start
24   all over again.  You would go back to the jury room,
25   jury would have to write another question, we would have

1  to go through the whole process; and I think you can see
2  that that would take a lot of time.  My experience has
3  been that in the end, although you will have questions,
4  your questions will either be answered or you will
5  realize that the question was not that important to the
6  resolution of the case.
7       Now, I want you to keep a couple of extra things in
8  mind.  First of all, I hope you're comfortable here.
9  Sometimes it gets cold in here.  The building is an old
10 building and we try to keep everything comfortable but
11 sometimes it may get too chilly, so bring a jacket or a
12 sweater when you come in.
13      I take recesses about every hour and a half; but if
14 you need to take a recess, don't sit there and suffer,
15 just raise your hand and say, Judge, can we have a
16 recess and we'll take a recess.
17      Generally speaking, we break for lunch around noon.
18 You can bring your lunch if you wish.  There are a
19 couple places to eat within easy walking distance.  One
20 over here in the Epic Center and then there's another
21 one a block down the street on the left in that old
22 building, the name of which -- is that the Occidental
23 building, the --
24           MS. LARY:  Yes.
25           THE COURT:  The name of which I cannot now

1    recall -- where you can get lunch over the noon hour.  I
2    really think that's all I need to tell you.  Mrs. Lary,
3    who is my courtroom deputy, will take you in and orient
4    you to the jury room, get you acquainted with how you
5    get in and out of the area here, and answer any
6    questions that you have if you've got questions about
7    parking.  We'll take your number and -- so your kids can
8    call if they get nervous.  Tell 'em not to call too
9    much.  But we understand that.
10           This is Cindy Schwemmer, my court reporter.  Her
11   job is to take down everything that is said here in
12   court no matter who says it.  And she doesn't edit
13   anything.  It's whatever is said.  She's not making a
14   record for you, though, I want you to understand that.
15   You're going to have to remember the evidence in the
16   case.  Her job at this point is to make a record in case
17   the matter is reviewed by a higher court.  But I don't
18   think you'll have any problem remembering the evidence.
19           This is Teresa Schreffler who is one of my law
20   clerks.  Ms. Schreffler is a lawyer.  I have two law
21   clerks.  The other one is Rachael Silva and you won't
22   probably see her during the trial.  Ms. Schreffler has
23   been here now for about two years and in August she's
24   going to go to work for a Court of Appeals judge in
25   Lawrence.  So how she's helped me in this case is that

1     she's prepared the initial set of jury instructions, and
2     I'll go through those and then the lawyers and I will
3     discuss those instructions and ultimately you'll each
4     get a packet of instructions to use during -- in the
5     jury room.
6         All right.  With that, I'm going to excuse you
7     until a little after 1, probably about 1:10 or 1:15 so
8     that you'll get oriented and then be able to go to
9     lunch.  When you come back, we'll have opening
10    statements and then we'll begin the evidence.  So you're
11    excused.  Remember and heed the admonition.
12                    (Jury excused for noon recess.)
13            THE COURT:  Anything we need to cover before
14    we break for lunch?
15            MR. OAKLEY:  Nothing that the Government
16    needs, Your Honor.
17            THE COURT:  Steve, you need anything before we
18    go to lunch?
19            MR. GRADERT:  No, Judge.  Thank you.
20                    (Noon recess at 11:55 a.m.)
21
22
23
24
25